BERTRAND G. JUDGE v. MASONIC MUT. BEN. ASSN.

1. EFFECT OF FAILURE TO ENTER ON RECORD CHANGE OF ADDRESS.
    A fraternal beneficial association having been apprised of a change of address of the insured cannot predicate a forfeiture upon a failure to pay an assessment, if by reason of its failure to record such change the requisite notice, mailed to the former address, be not in fact received by the member.

2. PREPONDERANCE OF PROOF NOT REQUIRED TO OFFSET PRESUMPTION OF DELIVERY OF LETTER MAILED.
    Proof of the mailing of a letter properly stamped and addressed affords *prima facie* evidence of its receipt by the person to whom directed; and this applies notwithstanding the address of the addressee may have been lately changed, as in this case; the well-known accuracy, knowledge, facilities and practice of the post office department in such matters raising the presumption of delivery; but this being a rebuttable presumption which may be met by evidence of equal weight or countervailing force, a preponderance of proof that it was not received is not necessary to overcome the presumption of delivery.
    [For other cases in point, see 4 Cyc. Dig. "Evidence," §§ 854-855.—Ed.]

Lucas County.

**3.** Reversal for Prejudice in Charge as to Burden of Proof.

A judgment will be reversed where the charge improperly requires the burden of proof upon an issue, especially where the evidence is close and conflicting and not so clear and conclusive as to enable the reviewing court to say prejudice did not result therefrom.

[For other cases in point, see 4 Cyc. Dig., "Error," §§ 345-359.—Ed.]

[Syllabus approved by the court.]

Error to Lucas common pleas court.

F. E. Rheinfrank and G. A. Ohlinger, for plaintiff in error.

King & Tracy, C. T. Johnson and C. H. Lemmon, for defendant in error.

## PARKER, J.

Bertrand G. Judge, as the beneficiary under a certificate of insurance issued by the Mutual Benefit Association for Masons' Wives, in which his wife was insured for his benefit upon her death, brought an action in the court of common pleas against the Masonic Mutual Benefit Association, of Toledo, Ohio, which he alleged had assumed the obligations of the association issuing the certificate, to recover the amount of the insurance.

The issues in the case can be definitely and succinctly stated by adopting the statement of the trial judge in his charge to the jury, and that statement is as follows:

"The plaintiff, Bertrand G. Judge, has brought this action to recover the sum of $1,000 and interest thereon from November 1, 1904, which he claims is due him upon a contract entered into between the defendant, the Masonic Mutual Benefit Association, and his wife, Jessie Georgia Judge, since deceased.

"Before calling attention to the issues or questions of fact you must decide from the preponderance of the evidence, I desire to first state those material facts about which there is no controversy, and which you will, therefore, consider as established. These facts are as follows: On or about June 24, 1902, the defendant entered into a contract with the said Jessie Georgia Judge, whereby she became a member of said association. And whereby, in consideration of the payment by her, at the time and in the manner provided by its constitution and rules, of all assessments thereafter called and made upon its members, it promised and agreed to pay to the said Bertrand G. Judge at some time after her death the sum of $1,000."

I supplement that statement at this point by the statement that the certificate issued by the Mutual Benefit Association for Masons' Wives, which was a voluntary or unincorporated association, bears date

Judge v. Benefit Association.

February 19, 1900, and afterward the Masonic Mutual Benefit Association was incorporated, and, by a resolution adopted on May 21, 1902, the Masonic Mutual Benefit Association assumed the risks or the obligations of the other association, and by a letter to members dated June 24, 1902, it stated that it had done so, giving members the privilege of coming in under that arrangement, which Jessie Georgia Judge appears to have done. I proceed with the statement of the trial judge:

"The constitution and rules of the defendant, among other things, provided that assessments upon its members should be called or made by the board of directors as the same were deemed necessary, payable on or before the fifteenth day of the month in which they were made; that notice thereof stating the time payable and amount due should be given each member by mail directed to his last recorded address, and that the amount of each assessment should be determined by the age of the member who was assessed at the time of the assessment, as shown by a table in which the sum of seventy-eight cents is given as the amount of one assessment that could be made against a member at the age of twenty-eight years.

"It was further provided that if any member should fail to pay an assessment for fifteen days after notice thereof, he should cease to be a member of the defendant and forfeit all claims to the benefits thereof, as well as all moneys previously paid, and that the mailing of a notice of the making of an assessment, stating therein the time payable and amount due, directed to the last recorded address of a member, should constitute the notice required by the constitution and rules of the defendant to be given such member."

The court then instructed the jury that these rules and regulations to which he had called their attention were parts of the contract entered into between the said defendant and the said Jessie Georgia Judge, and that by them both parties thereto were bound.

At this point I remark that the certificate issued to Jessie Georgia Judge set forth that it was issued in consideration of certain statements, agreements and warranties made by her, and the truth thereof, "together with the rules, regulations and by-laws of said association now in force or that shall hereafter be adopted by said association, all of which are hereby made a part of this agreement;" and the rules and regulations of the Masonic Mutual Benefit Association provided, as the judge has stated, that the notice of assessments might be given by mailing the same to the last recorded address of a member (which seems to mean the last address recorded by the association in its books pro-

vided for that purpose), whereas the certificate before referred to contained the provision. following:

"It is further understood and agreed that the mailing of a notice of an assessment at. Toledo, Ohio, by the secretary of the association at the last address furnished the secretary by said member shall constitute a legal notice of such an assessment."

We are of the opinion that the charge of the court to the effect that. the rules and regulations of the Masonic Mutual Benefit. Association became a part of the contract between. Jessie Georgia Judge and that. association upon her acceptance of their proposal to assume the risks and obligations of the other association, was a correct charge; so that in so far as the rule respecting the mailing of notice contained in the certificate may have been modified by the constitution and rules of the other association, such alteration would amount to a modification of the contract, and would be binding upon the holder of the certificate. The judge proceeds to state:

"All assessments.levied by said defendant against said Mrs. Judge prior to December 23, 1903, were paid. While it is denied by the plaintiff, yet it is established by the uncontroverted evidence that on said December 23, 1903, the defendant, through its board of directors, levied two assessments against. its members, payable on or before January 15, 1904. It is conceded that at said time Mrs. Judge was twenty-eight years of age; that the amount of each assessment that was and could be made against her was the sum of seventy-eight cents. In other words, I instruct you that on December 23, 1903, the defendant duly and legally levied two assessments against the said Mrs. Judge, amounting in the aggregate to the sum of $1.56, which were payable on or before January 15, 1904. Neither of these assessments were ever paid, and on June 23, 1904, Mrs. Judge died.

"On February 23, 1905, the plaintiff duly made proof to the defendant of the death of his wife and demanded payment of the said sum of $1,000, but the defendant refused to comply therewith. Thereupon this action was brought to recover said sum of money from the defendant, and the plaintiff based his right thereto upon two grounds: First, that no notice of the assessment levied December 23, 1903, was ever given his wife by the defendant, as required by its constitution and rules; and, second, that on November 23, 1903, he paid the assessments made that month upon Mrs. Judge and that at that time he requested the secretary of the defendant to change the address of his wife from 408 Segur avenue to 1538 Western avenue, Toledo, Ohio; that said officer should have but did not record said address, and that by

Judge v. Benefit Association.

reason thereof she never received any notice from the defendant that it. had made two assessments against her amounting to $1.56 and payable on or before January 15, 1904.

"On the other hand the defendant claims that it did cause a notice of said assessment, stating therein the time payable and amount due, to be mailed to her, postage prepaid, directed to her last recorded address, and the defendant denies that it was ever requested or notified to make any change therein. It has been established by the uncontroverted evidence that the last recorded address of the said Mrs. Judge was 408 Segur avenue, Toledo, Ohio, and that on and for some time after November 23, 1903, she lived at 1538 Western avenue in this city."

I may add that the evidence shows that she moved from Segur avenue to Western avenue about October 1, 1903.

It will be observed that the crucial question in this case was whether notice, as required by the contract between Mrs. Judge and the association, had been given her, of the assessments levied on December 23, 1903, payable on or before January 15, 1904. The defense of the company was based on the nonpayment of those assessments, the plaintiff, on the other hand, contending that the obligation to pay had never arisen or, at least, that no forfeiture could be predicated upon the nonpayment for the reason that the requisite notice had not been given.

The case was tried to a jury, which returned a verdict in favor of the defendant. Motion for a new trial having been overruled and judgment entered upon the verdict, the plaintiff prosecutes error to this court, and the principal error complained of and the one that has been most earnestly debated before us and most fully considered by us, is that respecting alleged errors in the charge of the court on the subject of the burden of proof.

As I have said, we are of the opinion that the charge of the trial judge to the effect that the rules and regulations of the defendant became a part of the contract, was correct; but it does not follow that under any and all circumstances a notice mailed to the last recorded address would be sufficient; for, if a failure to record the last address correctly was the fault of the company, and if, because of such fault, the notice was not received by the insured, then the company could not predicate a forfeiture upon the strict compliance by it with the letter of this rule. In other words, it would be the duty of the company, upon notification and request, to record the address correctly, so that the last recorded address would be the true address—i. e., that of which the company had been notified—and it would devolve upon the company

to mail its notice to that address, and that duty would be the same even though it failed to record that address, precisely as if it had properly recorded it. And the rule should be so construed that "the last recorded address" would mean the last address which should have been recorded by the company in the performance of its duties.

The question of fact as to whether the company had been notified of this change of address was submitted to the jury. There was a conflict of evidence upon it. I need not take time to recite what the evidence was. It is sufficient to say that there was a conflict, and that it was not made so clear and certain by the evidence that the contention of either party was right and should prevail that the court could act thereon as upon a question of law.

If the company had sent the notice to the correct address, either that recorded or that which should have been recorded, then the insured would be in default on failing to pay the assessments, whether she received the notice or not. On the other hand, if the notice was not mailed and addressed in compliance with the rule, then the insured would not be in default unless she actually received the notice; but if she actually received the notice, then it is a matter of no consequence whether the notice had been actually addressed correctly or not. It will be seen that in the one event the mere mailing of the notice would be sufficient to put her in default; in the other event it would be necessary to show that she actually received the notice.

The testimony as to whether she had received the notice was conflicting. Now upon this conflict the judge charged the jury on the law of the case as follows:

"The burden is upon the defendant to prove by the preponderance of the evidence that on or about January 1, 1904, the defendant caused a notice of the two assessments in question, stating therein that they were payable on or before January 15, 1904, and that the amount due was the sum of $1.56, to be given the said Jessie Georgia Judge, by mail, directed to her last recorded address. If you do not so find from a preponderance of the evidence, your verdict will be in favor of the plaintiff. If you do so find from a preponderance of the evidence, then the burden is upon the plaintiff to prove by a preponderance of the evidence that on or about November 23, he paid certain assessments made against his wife, and then requested the secretary of the defendant to change her address to 1538 Western avenue, Toledo, Ohio. If you do not so find from a preponderance of the evidence, but do find from a preponderance of the evidence that no notice of said two assessments

Judge v. Benefit Association.

was given Mrs. Judge in the manner and form I have stated, then your verdict will be in favor of the defendant.''

The charge thus far was correct; that is to say, the correct re-corded address being at one time 408 Segur avenue, if the insured re-moved from there so that her address was changed it would devolve upon her to apprise the company of that fact, so as to lay upon the company the duty of changing the address; and we think it would de-volve upon the plaintiff to establish by a preponderance of the evi-dence his contention upon that issue. The charge then proceeds:

''If you find from a preponderance of the evidence that the plain-tiff, on or about said November 23, did request the secretary of the de-fendant to change the address of the said Mrs. Judge, as I have stated, and further find from a preponderance of the evidence that on or about January 1, 1904, the defendant caused a notice of said two assessments to be given her in the manner and form I have indicated, you will then determine from a preponderance of the evidence whether said notice was received by her. If you find from a preponderance of the evidence that on or about January 1, 1904, a notice of said two assessments, stat-ing therein the time, the sum, where payable and the amount due, were mailed, postage prepaid, directed to said Mrs. Judge at 408 Segur avenue, Toledo, Ohio, and that at said time it was the custom of the post office department of the United States Government, in this city, to deliver mail addressed to said Mrs. Judge at 1538 Western avenue, Toledo, Ohio, I instruct you that the presumption would arise that such notice was so delivered, and the burden would then devolve upon the plaintiff to remove that presumption by a preponderance of evidence. In other words, the burden would then be upon the plaintiff to prove by a preponderance of the evidence that said notice was not so de-livered.''

We think that under the authorities that charge was correct in part and in part incorrect. In other words, we think it was correct to charge that if at that time mail addressed to Mrs. Judge at 408 Segur avenue was customarily delivered to her—that is to say, if, in the usual course of the post office department's business, by reason of knowledge they had of her true address, or from any cause, it was customarily delivered at her true address, 1538 Western avenue, precisely as if it had been directed to 1538 Western avenue—then from that a presumption would arise that the notice had been received by her. This so-called presumption is a rebuttable presumption. It is not at all conclusive. It is rather an inference of fact. It is sometimes stated in the authorities in this way: That the mailing of a letter, properly addressed and stamped, affords

Lucas County.

*prima facie* evidence that it was delivered to the person to whom addressed. We know that our postal facilities are so efficient, and the practices of the department are so uniformly accurate, that this is a more reasonable presumption or inference at this day than it was when it was established as the law of England, many years ago.

It is stated in 22 Am. & Eng. Enc. Law (2 ed.) 1252, that,

"The rule was announced in England at an early date that if a letter is sent by post, properly addressed, a presumption of its receipt by the addressee arises; and this rule is now well settled in the United States. The presumption is based on the known and regular course of business of the post office department."

A great many authorities are cited in support of this proposition.

We do not understand that this branch of the proposition, or this particular part of the charge, is complained of, but what is complained of is the last part of this paragraph, to wit:

"And the burden would then devolve upon the plaintiff to remove that presumption by a preponderance of evidence. In other words, the burden would then be upon the plaintiff to prove by a preponderance of the evidence that said notice was not so delivered."

This proposition is repeated in a somewhat different form further along in the charge as follows:

"If you find from a preponderance of the evidence that on or about January 1, 1904, a notice of said two assessments in the form and manner I have indicated was deposited in the mail, postage prepaid, addressed to said Mrs. Judge at 408 Segur avenue, Toledo, Ohio, and that at said time it was the custom of the post office department of the United States government in this city to deliver mail thus addressed to Mrs. Judge at 1538 Western avenue, Toledo, Ohio, your verdict will be in favor of the defendant, unless you further find from a preponderance of the evidence that said notice was not so delivered."

In this paragraph it is not stated that upon proof of such mailing and such custom the burden of proof would then be upon the plaintiff to prove by a preponderance of evidence that the notice was not so delivered, but the effect of placing upon her the burden of establishing this fact by a preponderance of evidence appears to be precisely the same.

We are cited by counsel for plaintiff in error to a number of authorities bearing upon this question, to some of which I shall now call attention. In the case of *Huntley* v. *Whittier*, 105 Mass. 391 [7 Am. Rep. 536], a case upon a contract to recover the price of a velocipede,

wherein the chief issue was as to whether the defendant had received notice of completion of the order, Justice Gray says:

"The depositing of a letter in the post office, addressed to a merchant at his place of business, is *prima facie* evidence that he received it in the ordinary course of the mails; and where there is no other evidence, the jury should be so instructed. * * *

"The presumption so arising is not a conclusive presumption of law, but a mere inference of fact, founded upon the probability that the officers of the government will do their duty, in the usual course of business; and, when it is opposed by evidence that the letter was never received, it must be weighed, with all the other circumstances of the case, by the jury, in determining the question whether the letter was actually received or not; and the burden of proving its receipt remains throughout upon the party who asserts it."

In the case of *Home Ins. Co.* v. *Marple*, 1 Ind. App. 411 [27 N. E. Rep. 633], this is said in the syllabus:

"We are of the opinion, where actual notice is required, evidence of the mailing of a letter containing such notice, properly addressed and stamped, is *prima facie* proof of the receipt of the notice, and, if its receipt is not denied, the court may instruct the jury to so find. But if its receipt is disputed, the question should be submitted to the jury to determine from all the evidence, both positive and circumstantial, whether the notice was in fact received or not. If the evidence is undisputed upon the essential fact and but one inference may be properly drawn from it, the court may so instruct the jury, and to that extent control the verdict; but if the evidence is conflicting, or of such a character that different inferences might be drawn from it, the question must be submitted to the jury without interference on the part of the court except to instruct generally upon the law of the case."

Other authorities are cited in the brief in support of the proposition that notwithstanding this presumption, or this *prima facie* case made out by proof of the mailing of the letter or notice, the burden of proof to establish the fact rests upon the party asserting that the notice was received—the party who is bound under the issues to establish by a preponderance of evidence at least that the notice was received. There is a late case by our Supreme Court that seems to have escaped the attention of counsel that bears directly upon this question. The case of *Klunk* v. *Railway*, 74 Ohio St. 125. I read from the syllabus:

"On the trial of an action against a railroad company, brought by a locomotive fireman for a personal injury received by him in consequence of a defect in the water gauge glass attached to the locomotive

upon which he was employed, an instruction that to overcome the effect of the *prima facie* evidence of negligence arising from proof of such defect 'the defendant company is required to satisfy the jury by a preponderance of the evidence that it was not negligent,' is erroneous.

"In such action the burden of proving, by a preponderance of the evidence, the particular negligence alleged, is at all times upon the plaintiff, and while proof of facts sufficient under the statute (section 3365-21 [Lan. 5425]), to create a *prima facie* presumption of negligence against the defendant casts upon it the burden of producing evidence of equal weight or countervailing force, in order to control or destroy such presumption, yet proof of such facts does not impose upon the defendant the burden of establishing affirmatively, by a preponderance of the evidence, that it was not negligent.

"The rule is, that he who affirms must prove, and when the whole of the evidence upon the issue involved leaves the case in equipoise, the party affirming must fail."

This last proposition is a reiteration of the statement of the law made in the case of *Lexington Fire, L. & M. Ins. Co.* v. *Paver,* 16 Ohio 324:

"In cases where the testimony upon any particular issue, leaves it doubtful whether the affirmative of that issue is sustained, it is a safe and proper course for the jury to find against the party holding the affirmative."

In the course of the opinion in *Klunk* v. *Railway, supra,* Judge Crew takes this question up and discusses it very fully, citing authorities; and since it may all be found there, it is not worth while for this court to carry the same matter into this opinion. I cannot forbear, however, reading a part of the opinion, though I do not know that that which I shall read is more pertinent or forceful than that which I shall leave unread. He calls attention, at page 133, to a decision by Justice Deemer, of the supreme court of Iowa, in the case of *Gibbs* v. *Bank,* 123 Iowa 736, 742 [99 N. W. Rep. 703], in which that judge states the rule as follows:

" 'When a *prima facie* case is made out by presumption or otherwise, in order to destroy its effect and shift the burden of producing further evidence, the party denying it must produce evidence tending to negative the claim asserted to a point where, if no more testimony is given, his adversary cannot win by a preponderance of the evidence. * * * It is clearly a misnomer of terms to say that the burden of proof swings like a pendulum from one side to the other during the

progress of a trial. All that is meant is, that the duty of introducing evidence to meet a *prima facie* case shifts back and forth.' "

He also notices *Scott* v. *Wood*, 81 Cal. 398 [22 Pac. Rep. 871], in which Hayne, C., commenting upon an instruction given by the trial court in that case, touching the quantum of evidence necessary to rebut a *prima facie* case, says, page 134:

" 'We think that the court erred in telling the jury that the defendant was required to have a preponderance of testimony upon the question mentioned. The term 'burden of proof' is used in different senses. Sometimes it is used to signify the burden of making or meeting a *prima facie* case, and sometimes the burden of producing a preponderance of evidence. These burdens are often on the same party. But this is not necessarily or always the case. And it is by no means safe to infer that because a party has the burden of meeting a *prima facie* case, therefore he must have a preponderance of evidence. It may be sufficient for him to produce just enough evidence to counterbalance the evidence adduced against him.' "

Continuing, Judge Crew says:

"Perhaps one of the best statements to be found of the rule now under consideration, is that given by Chief Justice Shaw in *Powers* v. *Russell*, 30 Mass. (13 Pick.) 76, as follows: 'It may be useful to say a word upon the subject of the burden of proof. It was stated here that the plaintiff had made out a *prima facie* case, and, therefore, the burden of proof was shifted and placed upon the defendant. In a certain sense this is true. Where the party having the burden of proof establishes a *prima facie* case, and no proof to the contrary is offered, he will prevail. Therefore, the other party, if he would avoid the effect of such *prima facie* case, must produce evidence, of equal or greater weight, to balance and control it, or he will fail. Still the proof upon both sides applies to the affirmative or negative of one and the same issue, or proposition of fact; and the party whose case requires the proof of that fact, has all along the burden of proof. It does not shift, though the weight in either scale may at times preponderate.' "

Further quotations are made from authorities giving these rules in different language, but it all amounts to the same thing as applied to this case.

When the case was made out (as we may assume for the purposes of this discussion that it was) of the mailing of this letter, addressed in such a way as that in the usual course it would probably reach the person to whom it was addressed, and therefore a *prima facie* case was made out of the receipt of the letter or the notice by her, it then de-

volved upon the plaintiff in the case to overcome this *prima facie* case or to meet it by sufficient evidence, so that it could not be said that the presumption, or the *prima facie* case, prevailed; or, in the language of the syllabus in *Klunk* v. *Railway, supra,* the burden was cast upon the plaintiff of "producing evidence of equal weight or countervailing force in order to control or destroy such presumption." Yet the burden was not imposed by the law—as it was by the charge of the court—upon the plaintiff, of establishing affirmatively by a preponderance of evidence that the notice had not been received. If the evidence produced was sufficient to destroy the effect of this presumption, still—by the law— the burden rested upon the defendant all the time from the beginning to the end of the trial, to establish affirmatively by a preponderance of evidence that the notice was received, and if the problem seemed to the jury to be left by the evidence so evenly balanced that they could not say affirmatively either that the notice had been received or that it had not been received, it was the duty of the jury to find against the defendant in error on that issue; and the jury should have been so instructed.

In a close case, as this appears to have been, this error in the charge may have been the thing that resulted in the defeat of the plaintiff upon this issue. At all events, the evidence is not so clear and conclusive against the plaintiff upon this issue that we are able to say he was not prejudiced by this error. The rule upon this subject is stated in the case of *McNutt* v. *Kaufman*, 26 Ohio St. 127, in the syllabus, as follows:

"A misdirection of the jury, as to the burden of proof, is error for which the judgment will be reversed at the instance of the party prejudiced thereby.

"A reviewing court having found such error to exist, will not look into the testimony for the purpose of ascertaining whether the verdict is sustained by the weight of the evidence."

Because of this error in the charge, the judgment of the court below will be reversed.

**Haynes** and **Wildman, JJ.,** concur.