**PORTNEY, Plaintiff-Appellee, v. FRANK, Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 1877. Decided January 4, 1946.

Paul J. Gaiser, Dayton, for plaintiff-appellee.
Louis R. Mahrt, Dayton, for defendant-appellant.

368

## OPINION

By WISEMAN, J:

This is an appeal on law from the judgment of the Common Pleas Court of Montgomery County, Ohio, in a case in which plaintiff, a real estate broker, sued for commission and obtained in his favor a verdict in the amount of $980.00 with 6% interest from April 20, 1944.

The Defendant-Appellant in his assignment of errors claims that prejudicial error was committed in the following particulars:

1. That counsel for Defendant was guilty of misconduct in his argument before the jury;

2. That the court erred in refusing judgment to the defendant notwithstanding the verdict;

3. That the court erred in refusing to grant a new trial;

4. That the court erred in giving a special charge which was incomplete, in that it failed to define what is meant by "procuring cause of sale."

The record discloses that the defendant and the purchaser entered into an indemnity agreement whereby the purchaser agreed to pay the real estate broker's commission if the defendant was required to pay said commission. The Court was careful to keep from the jury any testimony relative to this indemnity agreement. The court excused the jury several times when this matter was being argued by counsel, which resulted in proffered testimony. However, counsel for plaintiff did cross-examine the purchaser, Mr. Longo, who admitted that he had an interest in the case if the Plaintiff should win. It is always proper for counsel to question a witness relative to his interest in the outcome of the case. Furthermore, we believe it is proper for counsel to argue before the jury that the witness had an interest. During the argument, counsel for the plaintiff stated that this interest was a "money" interest. Counsel for defendant objected to this line of argument and moved for the withdrawal of a juror and a continuance of the case. The court overruled the motion and instructed the jury to disregard the statement made by counsel. We do not believe that the argument of counsel was prejudicial to the defendant's case. The evi-

dence which was introduced and the statement made by counsel, did not require the Court to withdraw a juror and continue the case on the ground that evidence of an indemnity agreement had been brought to the attention of the jury. In this case, neither the evidence nor the statement of counsel reached that point, and it is our opinion that prejudicial error was not committed.

The defendant's second and third assignments of error may be considered together. The defendant contends that the court erred in refusing to render judgment for the defendant notwithstanding the verdict and also that the court erred in refusing to grant a new trial. The court is required to review the evidence which is conflicting on several important issues in the case. The record shows that the plaintiff and defendant entered into an oral contract about December 27, 1943, whereby the plaintiff was employed as a real estate broker to sell an apartment building owned by the defendant. The plaintiff and the defendant do not agree on the terms of the employment. The plaintiff testified that they discussed the sale price on a basis of rents, expenses and depreciation and arrived at an approximate figure of around $20,000.00 or $22,500.00. The plaintiff testified that the sale price was an "open figure." Plaintiff also testified as follows:

"Q. Did he stipulate definitely at any time what he authorized you to sell it for, did he make a definite stipulation?

A. No, sir, just 'get me an offer'.

Q. He just asked you to get him an offer?

A. I discussed it and I thought I would be able to get around $20,000.00 or $22,000.00, according to the rents of that property."

The defendant testified that he told the plaintiff that if he could get $22,500.00 for the property and nothing less, he would sell it. At another time, the defendant testified as follows:

"So Mr. Portney came over at 9:00 or there-abouts on the morning of December 27, and I told him I would go over my records of income and expenses of the apartment, and I had come to the conclusion I would sell if I could get $22,500.00 but not a cent less, I impressed that on him."

After the plaintiff was employed to find a purchaser, the plaintiff, according to his testimony, showed the property to

several persons, one of whom was Thomas Longo, who later became the purchaser. The defendant testified that the plaintiff informed him that he had shown the apartment to Longo. However, Longo testified that the plaintiff did not take him to the apartment but that he learned of the apartment being for sale through the plaintiff. The record shows that the plaintiff negotiated with Longo, which resulted in a written offer for $19,000.00 being made under date of January 25, 1944. The offer was to be binding up to and including February 1, 1944. This offer was refused by the defendant. Here again the testimony is in conflict, the plaintiff testified that the defendant stated he would take the matter up with his wife. Plaintiff further testified that the prospective purchaser, Longo, stated to him that he expected to be out of the City for several weeks, and that for this reason he was in no hurry to get the written offer back from the defendant. Plaintiff testified that after a week's time he went to the defendant's office, and that the defendant told him that he could not accept the proposition because he did not know what to do with the money. The defendant testified that the offer was rejected immediately when it was presented to him, on the ground that he did not want to sell for $19,000.00. The defendant denied ever having made the statement that he refused to sell because "he did not know what to do with the money." After the defendant rejected the offer, the plaintiff testified that he contacted Mr. Longo repeatedly in an attempt to get Mr. Longo to offer a higher price for the property, and that, at different times, Mr. Longo indicated his willingness to pay more than $19,000.00 for the property. The defendant admitted that the plaintiff told him he would try for a higher price, and that the plaintiff, subsequent to the rejection, contacted the defendant several times with respect to the sale of the property. The plaintiff claims that the defendant repeatedly told him that he was not going to sell the property as he did not know what to do with the money. The plaintiff returned the $200.00 check to Longo which he had tendered at the time he made the written offer. This check was returned by the plaintiff to Longo about March 5, 1944.

The record shows that on or about the 5th or 6th day of April, 1944, Longo went to the defendant's office for the purpose of purchasing the apartment. At that time Longo told the defendant that the plaintiff had called his attention to the property. However, the record shows that this was the first time that Longo and the defendant had met fact to face in regard to this transaction. At that time a conversation took place between Longo and the defendant, in which the de-

fendant was interested in knowing whether the plaintiff had anything to do with Longo coming to his office. Longo told the defendant that he had made an offer on the apartment, but that his check had been returned. Longo, in referring to the plaintiff, testified as follows:

"I don't know what he has to with it."

Longo testified that the defendant remarked:

"I don't think I want to sell the apartment, I don't know what I would do without the apartment, I don't need the money."

Longo testified that thereupon he told the defendant that he, Longo, did not want the apartment to make any money, but that he wanted it for the boys (meaning his sons and brothers) when they got home from the service. Thereupon the defendant stated:

"If that's the way you feel about it, I will take $22,000.00 for the apartment."

Longo, thereupon, agreed to make the purchase at $22,-000.00. On cross-examination, the defendant testified relative to the conversation which took place at the time the purchase was made, as follows:

"Q. Let me ask you when Mr. Longo came in to see you to sell the apartment, was there any conversation about a commission, possible commission, for Mr. Portney?

A. Yes, I think there was. I think that I explained to him that the reason I was willing to sell for $22,000.00 rather than $22,500.00 was because there would be no commission to pay."

After the defendant made the sale, he went to the office of the plaintiff and informed the plaintiff that the apartment had been sold. The record relative to this matter is as follows:

"Q. My question is, what prompted you to do so, if Mr. Portney is out of the picture completely, why did you go and tell him?

A. I didn't have to, but there is some common decency in mankind which I try to observe.

Q. I don't question you.

A. It was the polite and courteous thing to do. I knew he had tried to sell this apartment, and then sometime later, a matter of a number of weeks I had sold it, I thought it only fair to him to let him know so he wouldn't make any further efforts to sell the apartment."

The defendant contends that the contract of employment between the plaintiff and the defendant was a special contract for the sale of the defendant's property at a definite price, and that since a sale had not been made through the efforts of the plaintiff at the price designated, the plaintiff, as a matter of law, is not entitled to recover. Plaintiff does not rely on a special contract of employment. Plaintiff contends that he was employed generally to find a purchaser for the defendant's property, and that the sale price was only an approximate figure or as the plaintiff testified, it was an "open figure." The evidence relative to the terms of employment being directly in conflict, the court does not believe that the line of authorities relied upon by the defendant are applicable to the situation presented in the instant case. It was within the province of the jury to believe either the plaintiff or the defendant on this issue.

Even if there had been a special contract of employment which was later modified by negotiation and a sale effected at a lower figure, and the evidence showed that the plaintiff was the "procuring cause" of the sale, this court is of the opinion that under the law of Ohio, the plaintiff would be entitled to recover a commission based on the actual sale price.

The defendant further contends that the plaintiff did not produce a buyer at a "fair and reasonable price", as alleged in his amended petition. An effort was made during the trial of the case to get before the jury testimony relative to the offer of $19,000.00 being "fair and reasonable." The court repeatedly sustained objections to this line of testimony, and we are of the opinion the court ruled correctly. This testimony would have been pertinent if no sale had been effected, but since the defendant had actually consummated the sale with a purchaser who had been put in touch with the defendant by the plaintiff, the question of whether or not the plaintiff had produced a buyer at a "fair and reasonable" figure, was no longer an issue in the case. The broker is not required to show that he has produced a buyer who is "ready, willing and able" to buy at a figure designated by the owner

if it is shown that the owner has actually consummated a sale. The two situations bear a close analogy.

In **Corey, Admx. v Conn, 107 Oh St, 113,** the court on page 115, says:

"A further claim made against the petition and the evidence below is that the plaintiff below did not plead in his petition, nor did he offer upon the trial, any evidence showing that the purchaser, \*\*\*was able by reason of financial ability to purchase on the terms set forth in the contract, nor did he plead, or offer evidence to show that the purchaser was ready, willing and able to purchase said property on the terms of the contract \*\*\*.

The evidence offered in open court showed a contract of sale \*\*\*. That contract of sale made immaterial the complaint made by the plaintiff in erorr. The financial responsibility of the prospective purchaser was open to question by Corey until the contract of sale was agreed upon and completed. After the contract was duly executed by the. parties, such contract constituted a waiver so far as Conn was concerned in regard to the purchaser being ready, willing and able to purchase the property."

Consequently, this court is of the opinion that the plaintiff was not required to show that he had produced a buyer at a "fair and reasonable" price, inasmuch as the defendant had actually consummated a sale with the purchaser produced by the plaintiff. At this point, the court might comment on the the general charge, in which the court charged the jury several different times relative to the plaintiff producing a buyer who is "ready, willing and able" to buy at the price stipulated by the owner. In view of the state of the record and the proposition of law laid down in Corey v Conn, supra, we do not believe that such a charge should have been given, but such a charge, if prejudicial, worked to the prejudice of the plaintiff rather than the defendant.

The defendant contends that the trial court erred in refusing to grant a new trial for the reason that the court charged the jury that the amount of recovery, if the plaintiff had made out his case, should be $980.00 together with interest at 6% from April 20, 1944, which was the date of the sale. The court in its general charge, instructed the jury as follows:

"If, after careful consideration of the evidence, you arrive at a verdict in favor of the plaintiff, the amount of your

verdict will be for the full amount as prayed for in the suit, $980.00 together with interest at 6% from April 20, 1944."

Counsel now claims that under this charge the jury was not permitted to consider the value of the services of the plaintiff, based on quantum meruit. In the trial of the case, counsel for the defendant took the opposite view. He made the following statement on the objection:

"We feel he is asking for a commission on a definite percentage basis and on a particular deal. He is not asking for "quantum meruit", but what the jury might think his services were worth."

The only evidence in this case was presented by the plaintiff when Mr. Clarence E. Roudebush, President of the Dayton Real Estate Board, was placed on the stand to testify as to the rate of commission paid to real estate brokers in the City of Dayton. He testified that the rate of commission was 5% on the first $10,000.00, and 4% on the balance of the purchase price. By mathematical calculation, on a sale figure of $22,-000.00, the commission would be $980.00. On this phase of the case, defendant testified as follows:

"Q. Then what occurred after that?
A. That was about all the conversation, there was nothing said as he alleges in his petition, what commission would be paid, of course, I knew as a lawyer, of the commission, if he earned it, it would be paid to him, but nothing was said about it."

In view of the state of the record, there was no other evidence presented for the consideration of the jury, except that given by Mr. Roudebush, all of which appears to have been accepted by both the plaintiff and the defendant as the true measure of recovery. Either the plaintiff was entitled to recover $980.00 together with interest from the date of sale, or he was not entitled to recover anything. The court so instructed the jury, and we believe, on this issue, the jury was properly instructed.

The court is of the opinion that the trial court did not commit eror in refusing to render judgment to the defendant notwithstanding the verdict; neither did the trial court commit error in refusing to grant a new trial.

The fourth assignment of error is as follows:

"4. Court below erred in granting the following instruction requested by the Plaintiff-Appellee: I charge you members of the jury that a broker is entitled to a commission even if he did not bring a purchaser and seller together, or even if he did not show the property to the purchaser, if the jury finds that he was in fact the procuring cause of the sale."

A number of special charges were requested by both the plaintiff and the defendant. Some of the charges were allowed and others disallowed. The defendant contends that the special charge which was given on request of plaintiff was incomplete in that the court failed to define "procuring cause." Counsel for the defendant relies on **Presti v Cleveland Railway Co., 26 Oh App 536**, in which it was held:

"Written instructions before argument under §11420-1 GC, unlike instruction at the conclusion of argument, become unquestioned law of the case, and hence must fully state law on subject."

And also in the case of Ohlinger v Toledo, 20 O.C.C., 142, which holds that a special instruction should be "complete in itself." The court did not define "procuring cause" in the general charge. In failing to define what was meant by "procuring cause" in the special charge and also in the general charge, did the trial court commit prejudicial error? Counsel for defendant only noted a 'general exception to the special charge and also to the general charge. At no time did counsel for the defendant call attention to the fact that the court had omitted to give a definition of "procuring cause." The law is well established in Ohio that a duty rests upon counsel in such a situation to bring such a matter to the attention of the court in order that the court may correct his charge or give a more complete charge. In **Vol 2, O. Jur, P 909**, the text is as follows:

"It is well settled in Ohio that if a charge is good so far as it goes, its failure to deal with a particular question arising in the case, or its omission of some matters which might have been included, does not constitute reversible error unless the omission was called to the attention of the court by counsel and an instruction requested, provided the jury are not misled by the instruction given. A mere general exception to the charge as given is not sufficient to call the attention of the court to such omission or to relieve counsel of the necessity

of requesting that additional instructions be given, since the statute provides that exceptions of this kind relate to errors of law which exist in the charge."

The statute referred to was §11561 GC, which was repealed on January 1, 1936; however, we have **Section 11560** which was amended at the same time, and reads as follows:

"An exception shall not be necessary, at any stage or step of the case or matter, to lay a foundation for review whenever a matter has been called to the attention of the court by exception, motion, or otherwise, and the court has ruled thereon. Error can be predicated upon **erroneous statements contained in the charge,** not induced by the complaining party, without exceptions being taken to the charge." (Emphasis ours.)

We do not believe that the provisions of this section change the case law in Ohio with respect to the duty of counsel to call the court's attention to any omission in a charge unless the jury was misled by the instruction given. In Railway Company v Ritter, the syllabus is as follows:

"Where the charge of the court is free from error prejudicial to the party excepting thereto, but fails to cover all the questions involved in the case, such failure is not a ground for reversal, unless it was called to the attention of the court, and further instructions requested and refused, provided the jury is not misled by the charge given.
2. A general exception of the charge of the court as now permitted by Section 5298, Revised Statutes, is effectual only as to errors of law existing in the charge as given, and does not bring in review on error, an omission or failure to give proper instruction."

In **State v McCoy, 88 Oh St 447,** the court on Page 450, says:

"Measured by this rule, this charge is defective in that it fails to definitely cover the issues in the case. It is equally a settled rule of practice in this State, that where the charge as given is free from prejudicial error but fails to cover all the questions involved in the case, such failure is not a ground for reversal unless it was called to the attention of the court and further instructions requested and refused, providing

the jury is not misled by the charge as given. (Cases cited.)

See also **State v Driscol, 106 Oh St 33.**

The court should have instructed the jury relative to the meaning of "procuring cause" but we are of the opinion that the failure to do so did not amount to the prejudicial error.

Was the jury misled by the instruction given? We do not think so. Did the court properly state the law in its special charge? In the instant case, the court charged the jury that the plaintiff would be entitled to recover "even if he did not bring a purchaser and seller together, or even if he did not show the property to the purchaser, providing the plaintiff was the procuring cause of the sale." In its general charge the court charged the jury as follows:

"The broker, or agent, must bring the parties together, and in order to bring them together in a transaction, their minds must meet on all material points involved in the transaction."

In view of the evidence in this case, we are of the opinion that what the court intended to convey to the jury, and what the jury understood, was that even though the plaintiff did not actually introduce in person the purchaser to the defendant, or even if he did not show the defendant's apartment to the purchaser, as Longo, the purchaser, testified, nevertheless, if the jury should find that the sale was consummated through the efforts of the plaintiff, the plaintiff would be entitled to recover. We believe that the instruction was proper and is supported by the case law of Ohio. **Vol 6, O. Jur. P 211, Sec 39,** the text is as follows:

"It is a general rule of law that a broker, in order to be entitled to compensation for his efforts, must be the procuring cause of the sale. But what amounts to the procuring cause of the sale is not readily susceptible of definition. The question is one of fact, and the courts have generally, in the individual case, determined from a careful inspection of the facts whether or not the broker was procuring cause of the sale. For example, it is not indispensable that the purchaser should be introduced to the owner by the broker, nor that the broker should be personally acquainted with the purchaser; but in such cases it must affirmatively appear that the purchaser was induced to apply to the owner through the means employed by the broker. And the broker may be the procuring cause, though he never saw or personally communicated

with the purchaser, and never knew of the negotiations until after the transaction was consummated."

and continuing on **P 212, Sec. 40,** the text is as follows:

"Thus, a broker, though not having an exclusive listing, is entitled to recover commission, even though he did not bring the purchaser and owner into personal contact or show the property to the purchaser, if the jury find that he was in .fact the procuring cause of the sale."

And again on **P 214, Sec 42,** the text is as follows:

"The question as to whether a real estate broker employed to find a buyer is entitled to his commission upon the sale of real estate when he has procured a purchaser with whom the seller enters into a contract of sale has been finally settled in Ohio to the effect that the broker has a right to commission when he has produced a purchaser with whom the seller has entered into a contract of sale." ,

In Haskins v Lewis, 11 C.C. (NS) 231, the syllabus is as follows:

"Where a broker brings a contract to his principal, but the principal declined to accept for the reason that there would be no profit on the sale after the payment of the commission, but afterwards the principal accepted the same contract direct from the customer, he is liable to be broker for his commission."

In Lippert v Page, 13 CC (NS) 105, the second paragraph of the syllabus is as follows:

"'To entitle a real estate broker to recover commission, he must show that the purchaser was induced to apply to the owner through means employed by the broker. It is not indispensible, however, that the purchaser be introduced to the owner by the broker or that the broker be personally acquainted with the purchaser, or that the broker at the time, have knowledge of the negotiations between the owner and the purchaser."

Applying the principle of law which seems to be fairly well established in Ohio to the facts in this case, the court is of the opinion that the trial court properly instructed the

jury in the special charge. In the instant case, the sale was consummated between the owner and a purchaser who had been produced in the first instance by the plaintiff. Since the evidence showed a sale was consummated, all that the plaintiff was required to show was that he was the procuring cause of the sale, but he was not required to personally negotiate the deal between the owner and the purchaser. From the facts in this case, the jury had the right to draw the conclusion that the plaintiff was the procuring cause of the sale.

The judgment of the trial court is affirmed.

HORNBECK, P. J., and MILLER, J., concur.