LEWIS, D. B. A. AMERICAN REALTY CO., APPELLEE, *v.* ANSPON ET AL., APPELLANTS.

(No. 2158—Decided November 20, 1951.)

*Mr. Joseph W. Sharts* and *Mr. H. H. Singer,* for appellee.
*Messrs. Hyers, Leyland & Patterson,* for appellants.

WISEMAN, J.  This is an appeal on questions of law from a judgment of the Municipal Court of Dayton which rendered judgment for the plaintiff for a brokerage commission in the amount of $427.50 against all three defendants, appellants herein.

The cause was tried to the court without the intervention of a jury.  The court rendered a separate findings of fact and conclusions of law.

Plaintiff's suit consisted of two causes of action.  In the first cause of action plaintiff alleged that there was due him from the defendant William Houser $427.50 as a brokerage commission for services rendered pursuant to a contract.  In the second cause of action plaintiff alleged that William Houser, Alwin W. Anspon and Mary Kathryn Anspon entered into a conspiracy to defraud him of his commission.  In the second cause of action, which was based on fraud, the plaintiff alleged he was damaged in the sum of $427.50.  The plaintiff did not allege or attempt to prove at the trial that he was damaged in any amount over and above the amount which he claimed to be due as commission.

The trial court found that there was due the plaintiff on his first cause of action, according to the terms of the contract, the amount of $427.50 as commission earned.  On the second cause of action the trial court found that there was no damages proved.  However, the court found that the plaintiff was entitled to judgment, and in a separate entry rendered judgment on both causes of action against all three defendants in the sum of $427.50 with interest at six per cent per annum from March 28, 1949.

Three errors are assigned: First, the overruling of defendants' motion to dismiss at the close of plaintiff's testimony; second, the overruling of defendants' motion to dismiss at the conclusions of all the evidence; and, third, error committed in the separate findings of fact and conclusions of law.

The first assignment of error is not well made. Upon the motion to dismiss being overruled, the defendants presented evidence in defense. Thus, any error in the action of the trial court in overruling the motion was waived and does not form the predicate of error on review. *Halkias* v. *Wilkoff Co.*, 141 Ohio St., 139, 47 N. E. (2d), 199; 2 Ohio Jurisprudence, 1590, Section 836.

The second and third assignments of error raise practically the same questions and will be considered together. The brokerage contract on which the plaintiff bases his right to recover a commission was entered into on March 28, 1949. On March 9, 1949, the Ohio State Board of Real Estate Examiners revoked the real estate broker's license which had been issued to the plaintiff in January 1949. The plaintiff received notice of such revocation by letter on March 22, 1949.

The defendants contend that the plaintiff could not maintain the action under the provisions of Section 6373-48, General Code, which provides:

"No right of action shall accrue to any person, partnership, association or corporation for the collection of compensation for the performance of the acts mentioned in Section 6373-25 of the General Code without alleging and proving that such person, partnership, association or corporation was duly licensed as a real estate broker or a real estate salesman, as the case may be, *at the time the cause of action arose.*" (Emphasis ours.)

In determining the issue presented, it is sufficient for this court to hold that the cause of action arose on and after the date of the contract, to wit, March 28, 1949. The defendants contend that since plaintiff's license was revoked prior to March 28, 1949, he cannot maintain the action, but the record shows that the plaintiff appealed to the Common Pleas Court from the order revoking his license. The record shows further that the Common Pleas Court under authority of Section 154-73, General Code (Administrative Procedure Act), by order duly made, granted a suspension of the order. The order of revocation being suspended, the plaintiff was not deprived of the right to do business under the license. The suspension order made by the Common Pleas Court suspended the operation of the order revoking the license from the date it became effective, to wit, March 22, 1949.

We come now to consider specifically the second and third assignments of error as they relate to the sufficiency of the evidence to support a judgment in favor of the plaintiff. We are in accord with the trial court in its finding that no damages over and above the liability for commission in the sum of $427.50 was shown in support of a recovery on the second cause of action, but the trial court rendered judgment on the second cause of action as well as the first cause of action. The amount of such judgment was $427.50, which was the amount the court found due for com mission earned on the first cause of action. Also, the trial court rendered judgment not only against Houser, but against the Anspons as well. The Anspons were not included as defendants in the first cause of action and, therefore, judgment could not be rendered against them under the first cause of action. The Anspons were included as defendants with Houser in the second cause of action, which should have been dismissed for

failure of proof. Therefore, the finding and judgment was prejudicially erroneous so far as it affects the Anspons and should be reversed as to them.

Did the court err in rendering judgment against Houser on the first cause of action for the amount of the commission?

The essential facts found by the trial court with which we are in accord are that the Anspons were the owners of a vacant lot on which they desired to build a house; that Houser was in the house contracting business; that plaintiff, Lewis, a real estate broker, obtained the signatures of the Anspons to a written proposition on March 28, 1949, to pay $8,550 for the construction of a house on the vacant lot; that such house was to be constructed according to certain plans and specifications as shown on "design No. D-65 of the small house plans book," and construction was to be approved by the Federal Housing Administration; that the offer was subject to the Anspons securing a $7,450 loan from the Federal Housing Administration; and that the Anspons agreed to and did deposit with Lewis $100 to cover costs of the plans and fee for application for the loan, leaving $35 balance on deposit.

The offer was accepted by Houser in writing. The acceptance clause which he signed is as follows:

"I hereby agree to accept the above offer and agree to deliver the proper papers to the prospect within the time specified. Also, to pay to the American Realty Company a commission of five per cent for brokerage service."

The evidence shows that Paul E. Lewis, the plaintiff herein, was doing business as a broker under the name of the American Realty Company; that Lewis brought the Anspons and Houser together and secured their signatures on the written proposal; that

Lewis induced Houser to prepare the plans for the house; and that Lewis assisted in making application for the loan. The loan was rejected on the ground that the plan as submitted did not provide for a side driveway or access from the alley, which was dedicated but not improved. When this fact was made known a dispute arose between Lewis, the Anspons, and Houser. The evidence on this point is voluminous, to some extent confusing, and on certain points definitely in conflict. The Anspons testified that they told the agent of Lewis that they wanted a side drive. Lewis and his witnesses dispute this, but do make certain admissions which lend support to the contention of the Anspons. Houser contended that in making the plans the agent of Lewis did not suggest a side drive, but did suggest the showing of the alley on the plans to be submitted. The evidence shows that the regulations of the Federal Housing Administration require either a side driveway or access from the alley. All parties agreed not to attempt to improve the alley, and the lot was too narrow to provide space for a side drive with the type of house which was to be constructed. Several weeks elapsed during which time numerous conversations took place between the parties. Lewis suggested that the Anspons and Houser agree on another plan of construction which would allow sufficient space for a side driveway, but Mrs. Anspon stated that she did not want to proceed further with the deal and that she was through. Lewis finally agreed to return to the Anspons the balance of the deposit of $35 which was done, the check being dated June 14, 1949. The evidence supports the conclusion that the conversation between Lewis and Mrs. Anspon, at which time he offered to return the balance of the deposit, took place about one week before the check was actually mailed. The evidence shows further that prior to receiving the

check the Anspons and Houser had held conferences, the purpose of which was to agree on a new house plan which would allow sufficient space for a side driveway. The Anspons made contact with the loan company and were advised to take no further steps until the returned check had been issued. The evidence shows that on the day the check was issued the Anspons and Houser drew a new written agreement, the date of the agreement being June 14, 1949, the figure "14" being crossed out and the figure "18" inserted with pen and ink. The house to be constructed on the lot in question was to cost the sum of $8,550. The new plans which were submitted to the loan company were approved and the loan granted on the original application without the payment of an additional fee. The house was constructed, and upon final settlement the agent of Lewis demanded five per cent commission on $8,550, which was refused.

The defendants contend that the mistake in the original plans was due to the negligence of Lewis and his agent and that he should not profit by his own mistake. Conceding that Lewis was at fault, the Anspons too are not without fault. Mr. Anspon saw the original plans and made no objection. It cannot be successfully contended that the failure to construct the house according to the original plan was entirely due to the fault of Lewis, but the issue presented raises other questions. The real issue is whether, in light of all the circumstances, Lewis is entitled to recover his commission on the theory that he was the procuring cause of the second contract entered into between Houser and the Anspons.

The defendants contend that the return of the deposit to the Anspons shows an abandonment on the part of Lewis and cite for authority the case of *Imoberstag* v. *Vail,* 3 Ohio Law Abs., 490. While the re-

turn of the deposit is evidence of abandonment, it is not conclusive. The evidence will support the conclusion that at the time Mrs. Anspon was negotiating with Lewis for the refund of the deposit, she was also negotiating with Houser on the second deal. The mere fact that Lewis returned the deposit to Mrs. Anspon does not deprive him of his right to a commission for the consummation of the second deal if, under all the evidence, he was the procuring cause of the second transaction. In many respects the second transaction was a part of the first. In order to recover his commission it was not essential that Lewis be present in person at the time the second agreement was entered into between Houser and the Anspons; neither was his signature required on this contract. *Portney* v. *Frank,* 77 Ohio App., 357, 372, 65 N. E. (2d), 290.

The evidence of conspiracy presented in support of the second cause of action was very pertinent in determining whether Lewis had abandoned the transaction or whether, under the first cause of action, he was entitled to recover commissions earned on the ground that he was the procuring cause of the transaction consummated. The conduct of Lewis which the defendants claim shows an abandonment was fully explained by the evidence to the effect that Mrs. Anspon stated she was through, when, as a matter of fact, the evidence shows that she was not through and was negotiating at the time with the principal of Lewis on a second deal.

The situation presented in this case is analogous to the right of a broker to a commission where the principal sells to the prospective purchaser on other terms than that offered by the broker. The principle is well established in Ohio that where a broker brings the parties together and the principal, without any knowledge on the part of the broker, consummates a deal

with the prospect without the assistance of the broker, the broker is entitled to recover commission. *Suter* v. *Farmers Fertilizer Co.,* 100 Ohio St., 403, 126 N. E., 304; *Mecklenborg* v. *Niehaus,* 85 Ohio App., 271, 84 N. E. (2d), 763; *Portney* v. *Frank supra*; 6 Ohio Jurisprudence, 229, Section 55; 8 American Jurisprudence, 1101, Section 190; and 12 Corpus Juris Secundum, 215, Section 93. The case of *Rabkin* v. *Calhoun,* 83 Ohio App., 222, 81 N. E. (2d), 241, cited by defendants is distinguishable on the facts.

In our opinion the evidence is ample to sustain the judgment of the trial court on the ground that Lewis was the procuring cause of the transaction entered into between Houser, his principal, and the Anspons. Therefore, Houser is liable to Lewis for commissions earned in the amount of $427.50 as found by the trial court.

Coming now to render the judgment which the trial court should have rendered this court renders judgment in favor of the Anspons on both causes of action, and in favor of Houser on the second cause of action, and in favor of the plaintiff and against the defendant Houser on the first cause of action.

Judgment reversed in part and affirmed in part.

*Judgment accordingly.*

Hornbeck, P. J., and Miller, J., concur.