CARLISLE THOMPSON AND ED GALLOWAY v. JAMES B. FOSTER AND WIFE, JO GRAHAM FOSTER.

(Filed 19 May, 1954.)

**1. Brokers § 10—**

Plaintiff brokers' complaint *held* sufficient to state a cause of action to recover commissions on the theory of *quantum meruit* upon allegations that defendant owners listed their property for sale at a stipulated price net to them, with the brokers to receive as commissions any amount in excess of the stipulated price which they could obtain for the property, and that plaintiff brokers obtained a prospect willing to pay a sum in excess of the stipulated price, but that through no fault of their own plaintiffs were prevented from effecting the sale because the owners took negotiations into their own hands and sold to plaintiffs' prospect for the stipulated price.

**2. Pleadings § 15—**

Upon demurrer, the allegations set out in the complaint will be taken as true, and liberally construed in favor of the plaintiffs.

APPEAL by plaintiffs from *Rudisill, J.,* at 1 February, 1954, Regular Civil Term of MECKLENBURG.

Civil action by real-estate brokers to recover compensation for services as alleged procuring cause of sale of land, heard below on demurrer to the complaint for failure to state facts sufficient to constitute a cause of action.

These in summary are the pertinent allegations of the complaint:

1. That at the times mentioned the plaintiffs were duly authorized real-estate brokers, registered as such, in Charlotte, North Carolina.

2 and 3. That at the times referred to the defendants, husband and wife, owned a certain tract of land located on East Boulevard in the City of Charlotte on which is situate a 13-unit apartment house.

4. That in the latter part of March, 1953, the plaintiffs met with the defendant James B. Foster, by appointment, at his home, at which time they were advised by Foster that he and his wife were desirous of selling their apartment property "for the sum of $50,000 net to them," and authorized the plaintiffs to procure a purchaser therefor on such basis.

5. That the plaintiffs thereupon entered into an extensive advertising campaign for the sale of the property and worked diligently to procure a purchaser. They received from one prospect an offer in the amount of $48,000. This offer was submitted to and refused by James B. Foster. Thereafter, on 18 May, 1953, one J. D. Crowder came to the plaintiffs' office in response to their advertisement for sale of the property in *The Charlotte Observer* of Sunday, 17 May, 1953. Crowder, after being shown the apartment property, stated he had some property on South

Boulevard which Lance, Inc., wanted to purchase but that he thought the long-term capital gain might prevent him from selling this property unless Lance, Inc., could trade some other property to him for it, the gain in such event under the provisions of the Internal Revenue Code not being recognized for income tax purposes.

6. Thereafter the plaintiffs saw Crowder several times with reference to the property.

7. In August, 1953, the plaintiffs talked with James B. Foster and told him the only two prospects to whom the property might be sold were the person whose offer of $48,000 had been refused in May, and J. D. Crowder, "who was quite interested in the purchase of the property but wanted to work out a three-way trade and had not made a cash offer therefor."

8. On 12 September, 1953, the plaintiff Carlisle Thompson called James B. Foster for an appointment to show the property to a third prospect. At that time Foster "told . . . Thompson . . . he had a man who would pay him $55,000 any time he agreed to sell and that he did not know whether he wanted to sell the property or not; . . ." Upon questioning, the defendant Foster told the plaintiff Thompson that the person who would pay $55,000 for the property was J. D. Crowder. Whereupon, the plaintiff Thompson told the defendant James B. Foster again that Crowder was plaintiffs' prospect, but that he wanted to work out a three-way trade for his South Boulevard property. The plaintiff Thompson further told "James B. Foster at that time that the plaintiffs would expect compensation from the defendants for their services on any sale of the property by the defendants to . . . Crowder."

9. That thereafter J. D. Crowder and the defendants agreed upon the sale of the property and in pursuance of the agreement deeds were executed as follows:

(a) On 28 September, 1953, the defendants conveyed to J. D. Crowder the apartment property, and on the same day Crowder and wife conveyed to the defendants the property on South Boulevard. The deeds, as recorded in the Public Registry of Mecklenburg County, show revenue stamps indicating a sale price in each instance of $10,000.

(b) On 29 September, 1953, the defendants by deed recorded in the Public Registry of Mecklenburg County conveyed to Lance, Inc., the property on South Boulevard which they had acquired from Crowder and wife, the revenue stamps on the deed indicating a sale price of $50,000.

10. As a result of the three-way transaction, "the property of the defendants was exchanged for property of . . . J. D. Crowder, and the defendants . . . received $50,000 from the sale of the property which had been conveyed to them by . . . Crowder and wife . . ."

11. That the plaintiffs commenced the negotiations with J. D. Crowder; that pending the negotiations, James B. Foster, unknown to plaintiffs, took the negotiations into his own hands and completed them and agreed with Crowder to enter into a three-way transaction with him and with Lance, Inc.; that in consequence, the defendants exchanged the apartment property with Crowder for the property he owned on South Boulevard and immediately sold the latter to Lance, Inc., thereby procuring $50,000 for their apartment property which had been placed in the hands of the plaintiffs for sale.

12. (Omitted as not being pertinent to decision.)

13. That the defendants had authorized the plaintiffs to sell the apartment property "for $50,000 net to them, agreeing to pay the plaintiffs . . . for their services . . . any sum in excess of $50,000; . . ."

14 and 15. That the plaintiffs were the procuring cause of the defendants' sale, and their services were worth $2,500, 5% of the purchase price received by the defendants; that the defendants are indebted to the plaintiffs in that amount, for which demand has been made and payment refused.

The trial court entered judgment sustaining the demurrer and dismissing the action. From the judgment so entered, the plaintiffs appealed.

*Henry E. Fisher and Lelia M. Alexander for plaintiffs, appellants.*
*Kennedy, Kennedy & Hickman for defendants, appellees.*

JOHNSON, J. The brokerage contract or listing here in suit does not purport to have conferred on the plaintiffs the exclusive right to sell the defendants' property. Therefore, the legal principles involved will be stated and discussed, and should be interpreted, against that factual background. See 8 Am. Jur., Brokers, Sections 57 and 192.

Ordinarily, where property is listed with a broker for sale at a stipulated price, out of which the broker's compensation is to be paid, and a sale is effected through the broker as a procuring cause, he is entitled to compensation, even though the final negotiations be conducted by the owner, who in order to make a sale accepts a price not exceeding or less than that stipulated to the broker, the theory being that the owner waives the stipulation regarding the price, and this being so, the law will not allow the owner of property sold to reap the benefits of the broker's labor without just reward. Therefore, in such case recovery may be had upon *quantum meruit. Lindsey v. Speight,* 224 N.C. 453, 21 S.E. 2d 371; *Trust Co. v. Goode,* 164 N.C. 19, 80 S.E. 62; *Martin v. Holly,* 104 N.C. 36, 10 S.E. 83; 8 Am. Jur., Brokers, Sections 172 and 190; Annotations: 43 A.L.R. 1103, 1104; 128 A.L.R. 430.

However, if the broker's contract provides for a stipulated net price to be paid the owner, with the broker's compensation being contingent upon payment out of whatever sum, if any, he is able to obtain for the property over and above the fixed sum to be obtained by the owner, the broker may not recover when the owner sells at the stipulated net price, or less, to a person to whom the broker first shows the property, unless the broker is able to show (1) that he was a procuring cause of the sale in the sense that he first called the purchaser's attention to the property and started the negotiations which culminated in the sale, and (2) that he, the broker, was prevented by fault of the owner from making a sale at a sum in excess of the stipulated net price. See 8 Am. Jur., Brokers, Sec. 190, p. 1102; Annotations: 43 A.L.R. 1103, 1111 *et seq.,* and 9 A.L.R. 1194. See also *Mallonee v. Young,* 119 N.C. 549, 26 S.E. 141; *Holcomb v. Stafford,* 102 Minn. 233, 113 N.W. 449; *Ball v. Dolan,* 21 S.D. 619, 114 N.W. 998; *Gilmore v. Bolio,* 165 Mich. 633, 131 N.W. 105; *Karr v. Moffett,* 105 Kan. 692, 185 P. 890.

In *Holcomb v. Stafford, supra,* the broker was to receive as his compensation all he could obtain for the property above $500. The property was afterwards sold by the owner to the broker's customer for that sum. On conflicting evidence the trial court found that the purchaser at all times refused to pay more than $500. The Court said: "Here the broker was entitled to the excess over and above the net price to the owner, and he was not entitled to a commission, except on procuring a purchaser ready, able, and willing to pay more than that price."

In *Gilmore v. Bolio, supra,* the defendant authorized the plaintiff to sell property for $1,400 net to defendant, and the prospective purchaser introduced by the plaintiff broker refused to buy on those terms, but about six weeks later purchased from the defendant for $1,300. Held, that the plaintiff was not entitled to recover, his right to compensation being dependent upon his ability to obtain a purchaser for a greater sum than $1,400.

Similarly, under the terms of the contract in the case at hand the plaintiffs' right to compensation was dependent upon their ability to obtain a purchaser for a sum greater than $50,000. They have alleged in substance that the defendants, after being advised that J. D. Crowder was a prospect, took over the negotiations with him, and that the defendants, after being offered $55,000 by Crowder, nevertheless closed the deal with him at $50,000.

These crucial allegations, with others set out in the complaint, when taken as true and liberally construed in favor of the plaintiffs, as is the rule on demurrer (*Scott v. Veneer Co., ante,* 73, top p. 77, 81 S.E. 2d 146), are sufficient to state a cause of action against the defendants on the theory that the plaintiffs were the procuring cause of the sale in the

sense that Crowder was their initial prospect and that they were prevented by fault of the defendants from making a sale at a sum in excess of the stipulated net price of $50,000. This overthrows the demurrer. The judgment below is
   Reversed.