THE PROPERTY SHOP, INC. v. MOUNTAIN CITY INVESTMENT COMPANY

No. 8128SC641

(Filed 6 April 1982)

**1. Rules of Civil Procedure § 32— compelling defendant to offer certain portions of deposition into evidence**

Where defendant offered part of a deposition into evidence, the trial court did not err in compelling defendant to offer certain additional deposition testimony relevant to that already in evidence. G.S. 1A-1, Rule 32(a)(5).

**2. Brokers and Factors § 1.1— knowledge that broker procuring cause of sale — instructions concerning**

In an action concerning a real estate commission, the trial judge did not err in failing to give instructions on the duty of a broker to inform a seller that a prospective purchaser was procured by the broker's efforts since the issue before the jury was whether the seller knew or should have known that the broker was the procuring cause of the sale, and the court properly instructed on that issue.

**3. Brokers and Factors § 6— breach of broker's contract—instructions concerning damages**

In an action concerning a real estate broker's commission, the trial court properly instructed that if the jury reached the damage issue, it would have already determined that the parties had entered into an agreement for the payment of a commission of six percent of the sales price of the property. The evidence was uncontroverted that the owner of the property told the broker that the "prospective price" for the property was $750,000 and that plaintiff would receive a six percent commission, and though the owner subsequently accepted $710,000 for the motel, the broker performed the service of producing a buyer who consummated the sales transaction to the satisfaction of the owner.

APPEAL by defendant from *Ferrell, Judge.* Judgment entered 22 January 1981 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 12 February 1982.

This is an action by plaintiff to recover a real estate commission on the sale of defendant's property to a purchaser allegedly procured by plaintiff.

Plaintiff alleged in its amended complaint that defendant listed the Downtowner Motel in Asheville with plaintiff at a sales price of $750,000 with a 6% commission; that plaintiff produced a purchaser who was ready, willing and able to buy defendant's property; that the purchaser, Bhagu Patel, purchased the motel for $710,000; that the contract to purchase the property contained

a provision in which the buyer warranted he had not been represented by a realtor entitled to a commission; that defendant refused to pay a real estate commission to plaintiff after the sale was completed; and that plaintiff was entitled to recover $42,600 (6% of $710,000), plus interest.

Defendant's answer denied the material allegations of the complaint.

At trial, plaintiff's evidence was as follows: Bernard Goldstein (hereinafter "Goldstein"), president of defendant company, is Ellen Goldstein's (hereinafter "Ellen") uncle by marriage. Defendant owned the Downtowner Motel in Asheville and its Board was discussing selling the motel. Ellen was a broker with plaintiff realty company. In February 1978 Goldstein agreed to allow Ellen to find a purchaser for the motel. The terms were a sales price of $750,000 with $200,000 down payment, and a commission to plaintiff of 6%. Defendant never executed the exclusive listing agreement prepared by plaintiff. Ellen obtained financial information on the motel from Jim Crawford, manager of the motel.

Ellen contacted Allied Business Brokers in Asheville and through them reached Frank Dostal, a broker in Macon, Georgia. Dostal brought Paul Patel to Asheville in August 1978 to look at the motel. Paul Patel made an offer for the motel. The offer was written on a form with the heading showing Dostal's Macon real estate company and listed Dostal as salesman. Glenn Snipes, Secretary of defendant, rejected the offer as being too low. Goldstein was given a copy of this offer.

In September Ellen told Goldstein that Dostal was bringing another client to see the motel and set up a meeting with the officers on 4 October 1978. Dostal arrived with the client, Bhagu Patel (hereinafter "Patel"), and they registered at the motel. Dostal informed Ellen that Patel was not interested in the motel and cancelled the meeting. Ellen learned in November that Patel had purchased the motel.

Several months after the sale, Dostal told Ellen that he had taken Patel to Waynesville on 4 October 1978 to meet Aaron Prevost, Vice President of defendant. Dostal introduced himself and told Prevost that he was working with plaintiff to secure a buyer for the motel. Prevost told Dostal that there was no listing

contract with plaintiff. After hearing this, Dostal left the room, and Patel and Prevost made arrangements for the sale. Bhagu Patel later offered Dostal $500 "to keep his mouth shut."

Goldstein learned from Prevost that Dostal was with Patel when they discussed purchase of the motel. He told Ellen to let the sale go through and that something would work out later concerning the commission because Patel would probably have to pay it due to the indemnity clause in the sales agreement.

Defendant's evidence was as follows: Goldstein testified that before the contract was signed, neither Ellen nor anyone else told Goldstein that Patel was the man to whom Dostal had shown the motel. Goldstein knew that Dostal was a broker who was trying to sell the motel, and he knew that Patel had come to Asheville with Dostal. Patel told Goldstein he was not represented by any broker and voluntarily signed a statement to that effect.

Jim Crawford, manager of the motel, testified that when Dostal could not reach Goldstein or Snipes on October 4, he suggested Dostal contact Prevost in Waynesville. Crawford called Prevost and told him there was a broker at the motel who had shown the property with Ellen and who was unable to contact Goldstein or Snipes. Dostal, Patel and Prevost agreed to meet in Waynesville to discuss the motel. Prevost and Snipes both knew that Ellen was trying to sell the motel, but they believed that defendant had not listed the property with any broker. Dostal told Prevost he had no interest in the matter, and Patel signed a statement that no broker was involved.

By deposition Bhagu Patel stated that he learned that the Downtowner was for sale through a cousin in High Point, Sombahai Patel. Dostal asked to go along with Patel to show him other property in Atlanta and Asheville. Plaintiff moved the court pursuant to Rule 32 of the North Carolina Rules of Civil Procedure to require defendant to offer certain portions of Patel's deposition, which motion was granted. In this further testimony Patel stated that he told Dostal he was going to look at the Downtowner. Dostal did not tell Patel that he had a listing on that motel and did not tell him that he had set up a meeting with the officers to discuss the sale of the motel. Neither Dostal nor Prevost ever mentioned plaintiff to Patel. Patel did not learn of the Downtowner through Paul Patel.

In rebuttal, Dostal testified that Bhagu Patel called him and said that he had been given Dostal's name by Paul Patel. Dostal sent Bhagu Patel financial information on the Downtowner and showed him the offer made by Paul Patel. Dostal told Prevost he was not working for Patel, but represented the sellers of the property.

The jury's verdict was that the parties entered into an agreement in which defendant agreed to pay plaintiff a commission if plaintiff sold defendant's property; that plaintiff procured a ready, willing and able purchaser; that defendant knew or should have known before the sale of the property that plaintiff had procured the purchaser; and that plaintiff was entitled to recover $42,600 from defendant. Defendant's motions for judgment notwithstanding the verdict and for a new trial were denied. Defendant appeals.

*Bennett, Kelly & Cagle by Harold K. Bennett for plaintiff appellee.*

*Adams, Hendon, Carson & Crow by George Ward Hendon for defendant appellant.*

CLARK, Judge.

Defendant first argues that the court erred in excluding portions of Bhagu Patel's testimony. Patel was allowed to testify that he learned of the Downtowner in a conversation with his cousin, Sombahai Patel, who lived in High Point. The court excluded Patel's testimony that his cousin said the property was nice and the reasons his cousin did not want to buy the property himself. We do not believe that the excluded statements were material or that excluding the testimony was prejudicial to defendant. *Hege v. Sellers*, 241 N.C. 240, 84 S.E. 2d 892 (1954). We find no merit to this exception and overrule it.

[1] Likewise, we find no merit in defendant's next argument that the trial court erred in compelling defendant to offer into evidence certain portions of the Bhagu Patel deposition. Defendant offered portions of the deposition concerning how Patel learned of the Downtowner's availability, his trip to Asheville, his meeting in Waynesville with Prevost, and his subsequent negotiations to purchase the motel. Upon plaintiff's motion, the court required de-

fendant to offer certain additional testimony relevant to that already in evidence and which concerned how Patel became acquainted with Frank Dostal and details of their arrangements to go to Asheville together to look at several motels. We think the court properly required defendant to introduce these portions of the deposition pursuant to G.S. 1A-1, Rule 32(a)(5), which reads as follows:

> "If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce any other part which is relevant to the part introduced, and any party may introduce any other parts."

We find that the additional testimony was relevant to portions of the deposition defendant had previously introduced and therefore overrule this exception.

Defendant argues that the trial court erred in overruling its objection to the jury argument by plaintiff's counsel in which he stated that Bhagu Patel might have to pay any bill in the case. G.S. 84-14 states that "In jury trials, the whole case as well of law as of fact may be argued to the jury." The general rule is that counsel may argue all the evidence to the jury, as well as any reasonable inferences to be drawn from it. *Crutcher v. Noel,* 284 N.C. 568, 201 S.E. 2d 855, *reh. denied,* 285 N.C. 597 (1974). In the case *sub judice,* the offer to purchase which was introduced into evidence stated that Buyer (Bhagu Patel) was not represented by a realtor and that he would "warrant and defend the Seller against any of the said types of fees or commissions." Also, Ellen Goldstein was allowed to testify without objection that Bernard Goldstein told her to let the sale go through because Patel would probably have to pay the commission due to the indemnity clause. We hold, therefore, that the trial court properly overruled defendant's objection since plaintiff's counsel was arguing facts which had been admitted into evidence without objection. We overrule this assignment of error.

[2] Defendant next assigns as error the failure of the trial court to give special instructions it had requested concerning the duty of a real estate broker to inform the property owner that it is the broker's prospect with whom the owner is negotiating. The duty of the trial judge is to declare the law arising on the evidence and to explain the application of the law to that evidence. G.S. 1A-1,

Rule 51(a). When a party tenders a written request for a specific instruction which is correct and supported by evidence, the failure of the court to give the instruction in substance is error. *Faeber v. E.C.T. Corp.*, 16 N.C. App. 429, 192 S.E. 2d 1 (1972).

We believe that the trial court properly instructed the jury on the law applicable to this issue. We do not agree with defendant that the judge should have given instructions on the duty of a broker to inform a seller that a prospective purchaser was procured by the broker's efforts. Rather, the issue before the jury was whether the seller knew or should have known that the broker was the procuring cause of the sale. The court instructed the jury on this issue as follows:

"The third issue, members of the jury, reads as follows: . . . did the defendant prior to the sale of defendant's property know or should it have known by the exercise of reasonable diligence that the plaintiff procured the purchaser. On this issue, members of the jury, the burden of proof, as I have defined that term, is upon the plaintiff to prove to you, the jury, from the evidence and by its greater weight that the defendant knew prior to the sale of its property or should have known by the exercise of reasonable diligence that the purchaser of its property had been procured by the plaintiff.

If the seller of property, instead of negotiating or dealing with the broker, deals directly with the purchaser knowing that the purchaser was sent to him by the broker or someone acting through the broker, then the seller would be liable to the broker for commissions agreed upon upon a sale of such property, or upon a showing that such purchaser was ready, willing, and able to purchase upon terms agreed upon between the seller and broker. . . . If the broker knows that the seller is negotiating with one the broker procured to purchase the property, and the broker has reasonable cause to believe that the seller does not know the broker procured such purchaser, the broker would have a duty to notify the seller of such fact to the end that the seller might not be misled into accepting a reduced price for the property on the theory that he would not be obligated as a result of a sale to pay real estate commissions. And if so knowing, the broker

fails to act to notify the seller, then in such event the broker would not be entitled to recover its commissions, for it would not have performed its obligations under the contract.

If, however, the broker does not know that the seller is negotiating with a purchaser procured by the broker, then in such event the broker would not be required to notify the seller for the law would not require the doing of something or the notification to someone of an act about which the broker had no knowledge. Even if the seller did not actually know that it was dealing with a purchaser procured by the broker and the seller in fact negotiates with a purchaser procured by the broker, the seller nevertheless would be liable for commissions if it could have ascertained with the exercise of reasonable diligence that the broker was in fact the procurer of the purchaser. What is reasonable diligence in ascertaining whether the seller should have known it was dealing directly with a person procured by the broker depends upon the facts and circumstances as you find them to have existed from the evidence at the times in question. Such circumstances include the conduct, statements and acts of the parties, including the acts and declarations of the purchaser to the effect that no broker was involved. However, the mere fact that the purchaser declares or states that no broker is involved standing alone is not sufficient to free the seller of its duty to ascertain that which the exercise of reasonable diligence would have revealed. The exercise of reasonable diligence is such diligence as a reasonably careful and prudent person under the same or similar circumstances would have exercised. . . .

If one of the officers of the defendant corporation knew or should have by the exercise of reasonable diligence ascertained that the purchaser with whom it dealt was procured in fact by the broker, then the corporation is chargeable with such knowledge whether other officers of the corporation knew it or not or should have known it or not by the exercise of reasonable diligence."

It is the general rule that a broker who is the procuring cause of a sale of property is entitled to a commission even though the owner himself makes the sale, unless the provisions of

the contract of employment provide otherwise. *Realty Agency, Inc. v. Duckworth & Shelton, Inc.*, 274 N.C. 243, 162 S.E. 2d 486 (1968); *Jaudon v. Swink*, 51 N.C. App. 433, 276 S.E. 2d 511 (1981). The plaintiff presented ample evidence which tended to show that defendant through its officers had notice that Bhagu Patel was procured as a buyer through the efforts of Frank Dostal. Defendant's evidence contradicted much of plaintiff's evidence, and therefore the issue properly before the jury was whether or not defendant knew or should have known of the broker's involvement. The credibility of each party's witnesses was properly a question for the jury upon all the evidence presented. We find that the court's instructions were proper and therefore overrule this assignment of error.

[3] Defendant's final assignment of error concerns the court's instructions to the jury on the measure of damages recoverable. Defendant submits that there was an express contract to recover a commission of six percent if the sales price was $750,000, not to recover six percent of the ultimate sales price, regardless of the amount. The fourth issue submitted to the jury concerned the amount plaintiff was entitled to recover of defendant. The trial court instructed that if the jury reached this issue, it would have already determined that the parties had entered into an agreement for the payment of a commission of six percent of the sales price of the property. The jury found that plaintiff was entitled to a recovery of $42,600, six percent of the $710,000 sales price.

The general rule is that if property is listed with a broker for sale and sale is brought about through the broker as procuring cause, he is entitled to a commission even though the final negotiations are conducted through the owner who accepts a price less than that stipulated to the broker. *Thompson v. Foster*, 240 N.C. 315, 82 S.E. 2d 109, 46 A.L.R. 2d 843 (1954); Annot., 46 A.L.R. 2d 848 (1956). "The law does not permit an owner 'to reap the benefits of the broker's labor without just reward' if he has requested a broker to undertake the sale of his property and accepts the results of services rendered at his request. In such case, *in the absence of a stipulation as to compensation*, he is liable for the reasonable value of those services." (Emphasis added.) *Realty Agency, Inc. v. Duckworth & Shelton, Inc., supra*, at 251, 162 S.E. 2d at 491. *Realty Agency* allowed recovery on *quantum meruit* to a broker who had expended time and efforts to sell defendant's

property, but in that case the broker did not find the prospect to whom the owner sold the property. Justice Sharp stated that "[t]his is not a situation in which an owner, who has listed real estate with the broker at a specified price, reduces the price and sells it to the broker's prospect. When that occurs, clearly the broker is entitled to compensation." *Id.* at 251, 162 S.E. 2d at 491.

Other decisions cited by defendant which allowed recovery on *quantum meruit* do not fit the facts of the case here presented. In *Thompson v. Foster, supra,* the listing agreement provided that the broker should receive for his services any sum for which the property sold in excess of $50,000. The owner dealt directly with the broker's prospect and sold the property to this prospect for $50,000. Therefore, the owner's acceptance of this price deprived the broker of his commission, and the broker was allowed to recover the reasonable value of his services. In *White v. Pleasants,* 225 N.C. 760, 36 S.E. 2d 227 (1945), *quantum meruit* recovery was allowed where there was an oral listing contract stipulating a sales price but setting no rate of compensation to the broker. *See also Lindsey v. Speight,* 224 N.C. 453, 31 S.E. 2d 371 (1944); *Aiken v. Collins,* 16 N.C. App. 504, 192 S.E. 2d 617 (1972).

The rule allowing *quantum meruit* recovery applies where no particular rate of commission is stipulated or specified in the listing agreement between the owner and the broker; but as a general rule when a sale is made by the owner at a price less than the broker is authorized to offer, the commission allowed is the contract rate on the actual sale price. *Baker v. Curtis,* 105 Cal. App. 2d 663, 234 P. 2d 153 (1951); *MacGregor v. Persha,* 174 Minn. 127, 218 N.W. 462 (1928); *Portney v. Frank,* 77 Ohio App. 357, 65 N.E. 2d 290 (1946); *Andrews v. Newton,* 118 Vt. 290, 108 A. 2d 517 (1954); Annot., 46 A.L.R. 2d 848 (1956). This general rule should be adopted in North Carolina because the agreed rate of commission accurately reflects the value of the services which the owner and broker considered fair and reasonable and is determinable with less difficulty than under the somewhat nebulous *quantum meruit* rule.

In the case *sub judice* the evidence is uncontroverted that Bernard Goldstein told Ellen that the "prospective price" for the motel was $750,000 and that plaintiff would receive a six percent

commission. Though the owner subsequently accepted $710,000 for the motel, the broker performed the service of producing a buyer who consummated the sales transaction to the satisfaction of the owner, and in light of the agreed commission rate the broker is entitled to recover six percent of the actual sales price as compensation. Though defendant does not question the validity of the oral listing, we note that oral contracts between broker and owner to negotiate the sale of land are not subject to the Statute of Frauds and are not required to be in writing. *Thompson-McLean, Inc. v. Campbell*, 261 N.C. 310, 134 S.E. 2d 671 (1964). Unquestionably, a written listing by the owner with the real estate broker is desirable, and a written listing may be required by Rule .0106 of the North Carolina Real Estate Licensing Board adopted pursuant to the authority of G.S. 93A-6(a)(15). We find no error in the trial court's instructions on the fourth issue.

The jury has spoken, and we find no prejudicial error in the trial.

No error.

Judges ARNOLD and WHICHARD concur.