DAVID SCHEERER, INDIVIDUALLY, AND MOUNTAIN LIFE REALTY, LLC, PLAINTIFFS-APPELLANTS V. JACK FISHER, INDIVIDUALLY, AND RENAISSANCE VENTURES, LLC, HIGHLAND FOREST PARTNERS, LLC, DEFENDANTS-APPELLEES

No. COA09-236

(Filed 19 January 2010)

### 1. Contracts— breach—oral instead of written—brokerage services

The trial court erred by dismissing plaintiffs' claim for breach of an express contract even though the alleged agreement between the parties was oral instead of written. However, plaintiffs may be subject to discipline by the N.C. Real Estate Commission for allegedly entering into an oral agreement for brokerage services.

### 2. Quantum Meruit— brokerage services—original contract failed to close—reasonable compensation

The trial court erred by dismissing plaintiffs' claim in *quantum meruit* when the undisputed facts established conduct demonstrating that defendants took action to deny a licensed real estate agent compensation that was earned for the services he rendered. Although the original contract the agent negotiated failed to close, the law implies a promise to pay some reasonable compensation for services rendered.

Appeal by plaintiffs from order entered 13 November 2008 by Judge Ronald K. Payne in Haywood County Superior Court. Heard in the Court of Appeals 15 September 2009.

*Ridenour Law Firm, P.A., by Eric Ridenour and J. Hunter Murphy, for plaintiffs-appellants.*

*Melrose, Seago & Lay, P.A., by Randal Seago, for defendants-appellees.*

CALABRIA, Judge.

David Scheerer ("Scheerer") and Mountain Life Realty, LLC ("Mountain Life") (collectively "plaintiffs"), appeal an order dismissing plaintiffs' complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2007) for failure to state a claim upon which relief could be granted. We reverse.

## I.  BACKGROUND

According to plaintiffs' allegations in their amended complaint, in January 2007, Scheerer notified Jack Fisher ("Fisher"), member-manager of Renaissance Ventures, LLC ("Renaissance Ventures"), that developments known as Highland Forest, LLC, and Indian Ridge Preserve, LLC (collectively "the properties"), were for sale. Scheerer and Fisher had a prior professional relationship and as a result, Fisher knew that Scheerer was a licensed real estate agent. At Fisher's request, Scheerer investigated the costs of developing the properties and negotiated terms with the owners of the properties ("the sellers").

On 20 March 2007, Fisher, as member-manager of Renaissance Ventures, executed purchase contracts ("the purchase contracts") for the properties for a combined total price of $20,000,000.00. One of the terms of the purchase contracts stated that at the closing of the properties, the sellers would pay Scheerer two per cent (2%) of the purchase price as commission. Fisher and Renaissance orally agreed to pay Scheerer 2% of the purchase price for his role as the buyer's procuring agent.

The relevant portion of the purchase contracts stated:

12. <u>Brokerage</u>. Seller agrees to pay commissions of two percent (2%) of the Purchase Price...to...David Schear [sic], and shall deliver to Purchaser at Closing signed receipts from each of the foregoing parties acknowledging its receipt of payment in full of all commissions, brokerage fees, or similar fees of whatever nature and kind arising out of the transactions contemplated herein. Seller and Purchaser represent and warrant

each to the other that they have not retained any other brokers in connection with this transaction. Either party guilty of a breach of this representation and warranty shall indemnify the other party for any claims, suits, liabilities, costs, judgments and expenses, including reasonable attorneys' fees for commissions resulting from or arising out of such party's actions in violation of this representation and warranty. These warranties shall survive the Closing.

In April 2007, through no fault of either plaintiffs or sellers, Fisher and Renaissance Ventures unilaterally rescinded the purchase contracts. Shortly thereafter, Fisher began negotiations with Anthony Antonio ("Antonio"), whereby Fisher agreed that Antonio would purchase the properties for substantially less than $20,000,000.00, then assign the new purchase contracts to Fisher. While Fisher was negotiating with Antonio, he continued to have simultaneous discussions with Scheerer regarding the amount Fisher would subsequently offer for the purchase of the properties and the timing of this subsequent offer. At no time did Fisher inform Scheerer of his negotiations with Antonio.

Fisher formed a new company, Highland Forest Partners, LLC ("Highland Partners"), for the purpose of holding title to the properties. On 3 October 2007, Fisher, through Highland Partners, purchased the properties. The deeds were then recorded in the Haywood County Registry. Fisher did not pay plaintiffs any commission for their role in procuring the properties for defendants.

On 4 January 2008, plaintiffs filed a complaint in Haywood County District Court. The case was subsequently transferred to Haywood County Superior Court. Plaintiffs then filed a voluntary dismissal against several original defendants and filed an amended complaint that added Renaissance Ventures as a defendant. The result of these filings was that plaintiffs' ultimate action was solely against Fisher, Highland Partners, and Renaissance Ventures (collectively "defendants"). Plaintiffs alleged breach of an express contract against Fisher and Renaissance Ventures. In the alternative, plaintiffs alleged a breach of implied contract and *quantum meruit* against defendants for reasonable compensation for the commission due for the 3 October 2007 purchase of the properties.

Defendants filed a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2007), for failure to state a claim upon which relief could be granted. Defendants argued in their motion that plain-

tiffs' claims were barred because they violated public policy. On 13 November 2008, the trial court granted defendants' motion to dismiss. From this order, plaintiffs appeal.

## II. Rule 12(b)(6)

The standard of review of an order granting a 12(b)(6) motion is whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true. On a motion to dismiss, the complaint's material factual allegations are taken as true.

*Burgin v. Owen*, 181 N.C. App. 511, 512, 640 S.E.2d 427, 428 (2007) (internal citations omitted).

Dismissal under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.

*Wood v. Guilford Cty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002) (internal citation omitted). The standard of review on an appeal of a grant of a motion to dismiss is *de novo*. *Burgin*, 181 N.C. App. at 512, 640 S.E.2d at 429.

## III. Express Contract

**[1]** Plaintiffs argue that the trial court erred in dismissing their claim of breach of an express contract because the alleged agreement between plaintiffs and defendants was oral, not written. We agree.

"[T]he authority of a duly authorized agent to contract to convey lands need not be in writing under the statute of frauds." *Lewis v. Allred*, 249 N.C. 486, 489, 106 S.E.2d 689, 692 (1959) (internal citations omitted). *See also The Property Shop v. Mountain City Investment Co.*, 56 N.C. App. 644, 653, 290 S.E.2d 222, 227-28 (1982); *Reichler v. Tillman*, 21 N.C. App. 38, 41, 203 S.E.2d 68, 70 (1974); A.S.M., Annotation, *Necessity of Written Authority to Enable Agent to Make Contract Within Statute of Frauds*, 27 A.L.R. 606 (1923); 72 Am. Jur. 2d *Statute of Frauds* § 299 (2009). "Furthermore, the authority of an agent to sell the lands of another may be shown *aliunde* or by parol." *Lewis*, 249 N.C. at 489, 106 S.E.2d at 692 (internal citation omitted); *Parker v. Glosson*, 182 N.C. App. 229, 239, 641 S.E.2d 735, 741 (2007)

(Tyson, J., dissenting); *Burgin,* 181 N.C. App. at 517, 640 S.E.2d at 431 (Tyson, J., dissenting). An agreement to compensate an agent or broker for services in the buying or selling of real estate need not be in writing. *Palmer v. Lowder,* 167 N.C. 331, 83 S.E. 464 (1914); *Lamb v. Baxter,* 130 N.C. 67, 40 S.E. 850 (1902); *Abbott v. Hunt,* 129 N.C. 403, 40 S.E. 119 (1901); W.W. Allen, Annotation, *Brokerage or Agency Contract Concerning Real Property as Within Statute of Frauds,* 151 A.L.R. 648 (1944).

In the instant case, plaintiffs alleged in their amended complaint that Scheerer, a real estate broker licensed in North Carolina, by and through his company, Mountain Life, became aware that the properties were for sale. Fisher asked Scheerer to draft a contract for defendants to purchase the properties. Renaissance, through Fisher, entered into written contracts to buy the properties, and orally agreed to pay plaintiffs a 2% commission based on the purchase price since plaintiffs represented the buyers. Renaissance, through Fisher, unilaterally rescinded the contracts. Fisher and Highland Partners subsequently purchased the properties. Plaintiffs' 2% commission was never paid. Plaintiffs have alleged sufficient facts to state a claim for breach of an express contract.

Defendants urge this Court to hold that N.C. Admin. Code tit. 21, r. 58A.0104(a) (2008), established by the North Carolina Real Estate Commission ("the Commission"), requires real estate agency brokerage contracts to be in writing in order to be enforceable. This regulation states in pertinent part:

Every agreement for brokerage services in a real estate transaction . . . shall be in writing and signed by the parties thereto. Every agreement for brokerage services between a broker and an owner of the property to be the subject of a transaction must be in writing and signed by the parties from the time of its formation. Every agreement for brokerage services between a broker and a buyer or tenant shall be express and shall be reduced to writing and signed by the parties thereto not later than the time one of the parties makes an offer to purchase, sell, rent, lease, or exchange real estate to another. However, every agreement between a broker and a buyer or tenant which seeks to bind the buyer or tenant for a period of time or to restrict the buyer's or tenant's right to work with other agents or without an agent shall be in writing and signed by the parties thereto from its formation. A broker shall not continue to represent a buyer or tenant with-

out a written, signed agreement when such agreement is required by this Rule.

N.C. Admin. Code tit. 21, r. 58A.0104(a) (2008). This regulation was passed pursuant to the enabling legislation in N.C. Gen. Stat. § 93A-3(c) (2007), which states in pertinent part, "[t]he Commission shall have power to make reasonable bylaws, rules and regulations that are not inconsistent with the provisions of [N.C. Gen. Stat. § 93A-1 *et seq.*] and the General Statutes[.]"

The recent case of *McAlister v. Hunter* guides our analysis of this issue. 634 F.Supp.2d 577 (W.D.N.C. 2009). *McAlister* involved a real estate broker who had a commission agreement that failed to follow the guidelines of the Commission set out in N.C. Admin. Code tit. 21, r. 58A.0104. *Id.* at 581-82. The *McAlister* court found that failure to follow the administrative requirements of N.C. Admin. Code tit. 21, r. 58A.0104 had no bearing on the validity of the contract, stating:

> [U]nder North Carolina law contracts between a broker and property owner to negotiate the sale of land are not required to be in writing in order to be legally enforceable. Therefore, Plaintiff's failure to satisfy the administrative requirements established by the North Carolina Real Estate Commission pursuant to the authority of N.C.G.S. 93A-3(c) do not void the contract in this case. Instead, these failures subject Plaintiff to possible discipline by the Real Estate Commission.

*Id.* at 581-82 (internal citations omitted). *See also* N.C. Gen. Stat. § 93A-6(15) (2007) (stating that the Commission has the power to suspend or revoke a license, or reprimand or censure a licensee if, after a hearing, the Commission finds the licensee guilty of "[v]iolating any rule or regulation promulgated by the Commission").

Further support for the conclusion that plaintiffs stated a valid claim based on the oral brokerage contract can be found by comparing the statutes from other jurisdictions to the North Carolina Administrative Code. A sample of the language found in statutes from states that have specific provisions requiring brokerage contracts to be in writing is "no action shall be brought" on such a contract,[1] or that such contracts are "void," "invalid," "not valid," or that no oral brokerage contract "shall be valid."[2] We note that there is no such lan-

---

1. ARIZ. REV. STAT. ANN. § 44-101 (2009); R.I. GEN. LAWS § 9-1-4(6) (2008); VA. CODE ANN. § 11-2(7) (2009).

2. CAL. CIV. CODE § 1624(a)(4) (West 2010); CONN. GEN. STAT. ANN. § 20-325a(b) (West 2009); IDAHO CODE ANN. § 9-508 (2009); IND. CODE § 32-21-1-10 (2009); MICH. COMP.

guage in N.C. Admin. Code tit. 21, r. 58A.0104(a) (2008) stating that an oral real estate brokerage contract is void or invalid, or that a party to such a contract is prohibited from bringing an action in North Carolina based on that contract. Therefore, when a plaintiff brings an action "simply to recover compensation for the personal services of the plaintiff [as a real estate broker] alleged to have been rendered under an agreement with the defendant and at his request[,]" the agreement "need not be in writing[.]" *Lamb*, 130 N.C. at 68, 40 S.E. at 851.

Under more than 100 years of prevailing case law in North Carolina, oral contracts to compensate a real estate broker for his or her professional services were not required to be in writing under our Statute of Frauds, N.C. Gen. Stat. § 22-1 *et seq.* (2007). Today, we reaffirm those precedents. "No court has been more faithful to *stare decisis.*" *Rabon v. Hospital*, 269 N.C. 1, 20, 152 S.E.2d 485, 498 (1967). Therefore, while plaintiffs may be subject to discipline by the Commission for allegedly entering into an oral agreement for brokerage services, sufficient facts exist to state a claim for breach of an express contract. The trial court erred in holding otherwise.

### IV. *Quantum Meruit*

**[2]** Plaintiffs argue that the trial court erred in dismissing their claim of *quantum meruit* for failure to state a claim upon which relief can be granted. We agree.

"Under Rule 8(a)(2) of the North Carolina Rules of Civil Procedure, plaintiff[s] [are] entitled to seek alternative forms of relief." *Eastway Wrecker Serv., Inc. v. City of Charlotte*, 165 N.C. App. 639, 642, 599 S.E.2d 410, 412 (2004) (citing N.C. Gen. Stat. § 1A-1, Rule 8(a)(2) (2003) ("Relief in the alternative or of several different types may be demanded.")). If plaintiffs' allegations in their claim for *quantum meruit* are accepted as true, no contract exists and *quantum meruit* is not excluded as a remedy *per se. Id.*

"[R]ecovery in *quantum meruit* will not be denied where a contract may be implied from the proven facts but the express contract alleged is not proved." *Paxton v. O.P.F., Inc.*, 64 N.C. App. 130, 132, 306 S.E.2d 527, 529 (1983). *See also Allen v. Seay*, 248 N.C. 321, 322, 103 S.E.2d 332, 333 (1958) (stating that even if a plaintiff's complaint

LAWS ANN. § 566.132(1)(e) (West 2009); MONT. CODE ANN. § 28-2-903(1)(e) (2007); NEB. REV. STAT. § 36-107 (2008); OR. REV. STAT. § 41.580(1)(g) (2005); TEX. OCC. CODE ANN. § 1101.806(C) (Vernon 2009); UTAH CODE ANN. § 25-5-4(1)(e) (2008); WASH. REV. CODE ANN. § 19.36.010 (West 2010); WIS. STAT. ANN. § 240.10(1) (West 2009).

fails to establish an express contract, the plaintiff's case may go to the jury if the complaint contains sufficient allegations to support a claim of *quantum meruit*). The rationale for allowing a plaintiff to plead both breach of express contract and breach of implied contract is that if the plaintiff "fail[s] to prove the existence of an express contract, [he or] she is not foreclosed from recovery in *quantum meruit* if a contract can be implied and the reasonable value of [his or] her services can be drawn from the evidence." *Potter v. Homestead Preservation Assn.*, 330 N.C. 569, 579, 412 S.E.2d 1, 7 (1992).

> To recover in *quantum meruit*, plaintiff[s] must show: (1) services were rendered to defendants; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously. In short, if plaintiff[s] alleged and proved acceptance of services and the value of those services, [they were] entitled to go to the jury on *quantum meruit*.

*Environmental Landscape Design v. Shields*, 75 N.C. App. 304, 306, 330 S.E.2d 627, 628 (1985) (internal citations omitted).

> Moreover, when under an existing contract of agency to sell land in which no stipulation is made for compensation the broker has . . . produced a purchaser who is ready, willing and able to buy the land, the rule seems to be that the broker is entitled to recover the reasonable value of his services.

*White v. Pleasants*, 225 N.C. 760, 763, 36 S.E.2d 227, 229 (1945).

In the instant case, as to their claim for *quantum meruit*, plaintiffs alleged that: (1) defendants had a prior professional relationship with Scheerer and therefore knew Scheerer was a real estate agent; (2) defendants knew plaintiffs were working on behalf of defendants to find property suitable for defendants to purchase; (3) plaintiffs told defendants that such property was for sale; (4) both parties expected plaintiffs to be paid a commission for their work; and (5) defendants were ready, willing, and able buyers and in fact purchased the properties located by plaintiffs.

The allegations stated by plaintiffs in their amended complaint, taken as true, show: (1) plaintiffs provided services to defendants; (2) defendants knowingly and voluntarily accepted the services; (3) plaintiffs did not perform these services gratuitously; (4) defendants were ready, willing and able buyers and in fact closed on the properties after rescinding the first contract and arranging for Antonio to purchase and assign the properties. More importantly, after rescind-

ing the contract but prior to closing, defendant Fisher continued to mislead plaintiffs by continuing discussions for submitting subsequent offers to purchase the properties. The undisputed facts establish conduct demonstrating that defendants took action to deny Scheerer compensation that was earned for the services he rendered. Although the original contract he negotiated failed to close, the law implies a promise to pay some reasonable compensation for services rendered. Plaintiffs' allegations state a valid claim for relief in *quantum meruit*.[3]

## V. CONCLUSION

Plaintiffs have alleged sufficient facts that, taken as true, state claims for both breach of an express contract and *quantum meruit*. Accordingly, the trial court erred by dismissing plaintiffs' action for failing to state a claim upon which relief could be granted. The order of the trial court dismissing plaintiffs' claims must be reversed.

Reversed.

Judges WYNN and ELMORE concur.

---

3. We note that defendants again urge us to find that (1) plaintiffs violated N.C. Admin. Code tit. 21, r. 58A.0104(a) and (2) the violation would force us to dismiss plaintiffs' *quantum meruit* claim due to public policy concerns. N.C. Admin. Code tit. 21, r. 58A.0104(a), by its terms, does not require a written contract prior to "the time one of the parties makes an offer to purchase." Because plaintiffs' *quantum meruit* claim involves services rendered prior to any offer to purchase, we decline to address this argument.